UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL J. PANTALONE, by and through his
attorneys in fact, Danny J. Pantalone and
Therese Howard,

                              Plaintiff,          6:10-CV-913
      v.

COUNTY OF FULTON and FULTON COUNTY
RESIDENTIAL HEALTH CARE FACILITY,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

OFFICE OF ELMER R. KEACH, III          BRETT A. ENGEL, ESQ.
Attorneys for Plaintiff
1040 Riverfront Center
P.O. Box 70
Amsterdam, NY 12010

MURPHY, BURNS LAW FIRM                THOMAS J. HIGGS, ESQ.
Attorneys for Defendants
226 Great Oaks Boulevard
Albany, NY 12203

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION AND ORDER

**I. INTRODUCTION**

     Plaintiff Daniel J. Pantalone ("plaintiff" or "Pantalone") by and through his

attorneys in fact, Danny J. Pantalone and Therese Howard, brings this action pursuant to

42 U.S.C. § 1983 and alleges that defendants Fulton County and the Fulton County

Residential Health Care Facility (collectively "defendants") violated rights guaranteed to

him under the Federal Nursing Home Reform Amendments ("FNHRA"), 42 U.S.C. § 1396r et seq. Plaintiff also brings a pendent state claim for negligence. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the FNHRA does not provide a federal right enforceable under § 1983.[1] Plaintiff opposes the motion.

Oral argument was heard on April 1, 2011, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

The following facts, taken from the complaint, are accepted as true for purposes of this motion to dismiss.

Plaintiff became a resident of the Fulton County Residential Health Care Facility (the "Facility") in December 2004. On August 3, 2009, two employees of the Facility were helping plaintiff—who is wheelchair bound—into the shower by placing him on a lift. A belt intended to hold plaintiff on the lift was not properly secured, and he fell to the shower floor. Plaintiff heard a loud "pop" when he hit the floor. On a subsequent "Transfer to Acute Care Facility" form, a nurse's aide noted: "heard knee pop while giving resident shower on 8/3/09." For two days after his fall, Pantalone remained in bed and suffered from severe pain in his leg. Plaintiff was not provided with any medical treatment until August 5, 2009, when his left leg was x-rayed, and he was diagnosed with a non-displaced fracture of the left femur. During his follow-up care, an unexplained left ankle fracture was also discovered.

---

[1] Defendants' sole argument for dismissal is that the FNHRA does not provide an enforceable federal right. Defendants do not seek dismissal based on the sufficiency of plaintiff's substantive claims.

### III. DISCUSSION

#### A. Motion to Dismiss—Legal Standard

To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiff fails to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570, 127 S. Ct. at 1974 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

#### B. Issue and Parties' Contentions

Plaintiff claims that defendants violated the following two provisions of the FNHRA:

> A nursing facility must care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident. 42 U.S.C. § 1396r(b)(1)(A).

> To the extent needed to fulfill all plans of care described [above], a nursing facility must provide (or arrange for the provision of) nursing and related services and specialized rehabilitative services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident. 42 U.S.C. § 1396r(b)(4)(A)(i).

It is undisputed that the FNHRA does not provide a private cause of action to be brought under the statute directly. However, a statute can create a right, enforceable through § 1983, by evidencing an "unambiguous" intent to confer such a right upon a class of beneficiaries. Gonzaga Univ. v. Doe, 536 U.S. 273, 283, 122 S. Ct. 2268, 2275 (2002). While the distinction between these two avenues for judicial redress has historically caused confusion, its impact on this matter is relatively minor as the guiding factor behind both is congressional intent. As the Supreme Court has clarified:

> We have recognized that whether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute. But the inquiries overlap in one meaningful respect—in either case we must first determine whether Congress *intended to create a federal right*. . . . [A] plaintiff suing under an implied right of action still must show that the statute manifests an intent to create not just a private *right* but also a private *remedy*.
> Plaintiffs suing under § 1983 do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes.

Id. at 283–84, 122 S. Ct. at 2275–76 (internal quotation marks, citations, and alterations omitted).

Defendants maintain that the FNHRA was not intended to provide nursing home residents with enforceable rights. Pantalone points to First and Third Circuit cases finding sufficient "rights-creating" language in the FNHRA to permit suit under § 1983. See Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 531 (3d Cir. 2009), cert. denied, 130 S. Ct. 1524 (2010); Rolland v. Romney, 318 F.3d 42, 52 (1st Cir. 2003). Defendants counter with non-binding case law from the Second Circuit holding that the FNHRA does not confer a right to sue. See Prince v. Dicker, 29 F. App'x 52, 54 (2d Cir. 2002) (summary order); Baum v. N. Dutchess Hosp., ___ F. Supp. 2d ___, 2011 WL

240196, at *10 (N.D.N.Y. Jan. 24, 2011) (Treece, M.J.). Defendants maintain that these cases suggest the Second Circuit is in conflict with the First and Third Circuits.

In addition to not being precedential, the Prince summary order provides little insight into how the Second Circuit may ultimately rule on this issue. Indeed, the Court's consideration of the FNHRA amounted to a single sentence noting that "the Nursing Home Reform Act's provisions do not confer a right of action on Prince that can be enforced against a private nursing home." Prince, 29 F. App'x at 54. To support this assertion, the Court cited a decision from the Northern District of Georgia. Id. (citing Brogdon ex rel. Cline v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1330–32 (N.D. Ga. 2000)). However, Brogdon was decided before the Supreme Court clarified the standard to be applied when considering whether Congress intended to confer an enforceable right. See Gonzaga Univ., 536 U.S. at 280–85, 122 S. Ct. at 2273–76. It is also respectfully noted that Baum is not binding and is balanced by Joseph S. v. Hogan, in which certain provisions of the FNHRA were found to confer enforceable rights. 561 F. Supp. 2d 280, 303 (E.D.N.Y. 2008).

Therefore, this issue is one of first impression as the Court of Appeals for the Second Circuit has not analyzed and conclusively ruled on whether the FNHRA confers a federal right upon nursing home residents that can be enforced through § 1983.

### C. 42 U.S.C. § 1983 and the FNHRA

To establish a prima facie case under § 1983 a plaintiff must allege (1) the violation of a right secured by the Constitution or federal law, and (2) that the alleged deprivation was committed under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250,

2254–55 (1988). The second prong is clearly met as the defendants include Fulton County and a county-run facility. As alluded to above, this matter turns on the first prong.

Section 1983 "safeguards certain rights conferred by federal statutes." Blessing v. Freestone, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359 (1997). To be able to recover under this provision, however, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." Id. Indeed, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit." Id. at 286, 122 S. Ct. at 2277. A mere reference to "rights" that has an aggregate, not an individual, focus does not give rise to a statute's enforceability under § 1983. Id. at 289–90, 122 S. Ct. at 2278–79.

When determining whether Congress intended to create a federal right, courts are guided by three factors: (1) the provision in question must have been intended to benefit the plaintiff; (2) the asserted right cannot be so "vague and amorphous" as to strain judicial competence through enforcement; and (3) "the statute must unambiguously impose a binding obligation on the States." Blessing, 520 U.S. at 340–41, 117 S. Ct. at 1359; Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 136 (2d Cir. 2010). If a plaintiff shows that the statute meets these three requirements, "the right is presumptively enforceable by § 1983." Gonzaga Univ., 536 U.S. at 284, 122 S. Ct. at 2276. "[Defendants] may rebut this presumption by showing that Congress specifically foreclosed a remedy under § 1983." Id. at 285 n.4, 122 S. Ct. at 2276 n.4 (internal quotation marks omitted).

### 1. First Blessing Factor

The first factor is easily established as the Second Circuit has held that § 1396r "is obviously intended to benefit Medicaid beneficiaries." Concourse Rehab. & Nursing Ctr.

Inc. v. Whalen, 249 F.3d 136, 143–44 (2d Cir. 2001).  The Court noted that § 1396r was not meant to benefit nursing home facilities, but rather their residents.  See id.  Indeed, § 1396r repeatedly refers to "residents" and details the level of care that a facility must provide to its "residents."  42 U.S.C. §§ 1396r(b)(1)(A), (b)(4)(A)(i).  Although the complaint does not allege that Pantalone is a Medicaid recipient, it is undisputed that he was a resident at the Facility at the time of his injury.  As such, he is an intended beneficiary of the FNHRA.

Moreover, the statutory language indicates that the FNHRA has an individual, not an aggregate, focus.  The specific provisions in question evidence a concern that the needs of particular persons—nursing home residents—are satisfied.  Section 1396r(b)(1)(A) instructs facilities to promote "the quality of life of each resident" while § 1396r(b)(4)(A)(i) requires the provision of service to attain the "well-being of each resident."  Id. (emphasis added).  In contrast, the statutes considered in Blessing and Gonzaga were couched in terms of institutional policy and required merely substantial, not complete, compliance.  Gonzaga Univ., 536 U.S. at 288, 122 S. Ct. at 2278; Blessing, 520 U.S. at 343, 117 S. Ct. at 1361.  Such statutory language was found to provide only a "yardstick" against which to measure systemwide performance, not a means to gauge whether the needs of particular persons were met.  Blessing, 520 U.S. at 343, 117 S. Ct. at 1361.  By requiring facilities to provide a certain level of care to improve the quality of life and well-being of each resident, the FNHRA focuses on the individual residents rather than systemwide policies.

Accordingly, the first factor is established.

**2. Second <u>Blessing</u> Factor**

The provisions under consideration make clear what level of service nursing facilities are required to provide to their residents. Courts are capable of enforcing such provisions, which instruct that a facility "<u>must</u> care" for its residents in a manner that promotes the residents' quality of life and "<u>must</u> provide" services to attain the highest practicable well-being of each resident. 42 U.S.C. §§ 1396r(b)(4)(A)(i), (b)(1)(A) (emphasis added). The use of these mandatory terms leaves little room for debate as to what is required of the facilities. Courts can competently consider and decide whether or not a facility has provided adequate care and services. Such a determination is arguably less complex than considering whether a state failed to "take into account" a required factor when designing a system of reimbursement—a question the Second Circuit found to be within judicial competence. <u>See</u> <u>Concourse Rehab.</u>, 249 F.3d at 144.

In addition, the statute states that "[t]he services provided or arranged by the facility <u>must</u> meet professional standards of quality." 42 U.S.C. § 1396r(b)(4)(A) (emphasis added). Federal courts are well-versed in evaluating such measures of quality and are often guided by industry standards and expert opinions. Moreover, the FNHRA requires the facility to create a written plan of care for each resident and then provide services as necessary to accomplish the plan. <u>Id</u>. §§ 1396r(b)(2), (b)(4)(A). It does not strain judicial competence to evaluate whether a facility has adequately provided services to achieve the goals set forth in a written plan.

Accordingly, the second factor is established.

### 3. Third <u>Blessing</u> Factor

The third factor is also established. The repeated use of "must" indicates that the obligations outlined in the FNHRA are binding on the states and nursing facilities. For example, a facility "<u>must</u> care" for its residents in a manner that promotes the residents' quality of life and "<u>must</u> provide" services to ensure the highest practicable well-being of each resident. Id. §§ 1396r(b)(4)(A)(i), (b)(1)(A) (emphasis added). This language makes the provisions mandatory, not advisory. This conclusion is further evidenced by the title of § 1396r—"Requirements for Nursing Facilities"—and the accompanying penalties that may be imposed for failure to implement the FNHRA's obligations.

### 4. The FNHRA Does Not Specifically Foreclose a Remedy Under § 1983

As all three <u>Blessing</u> factors are met, the rights conferred by the FNHRA are presumably enforceable through § 1983 unless Congress specifically foreclosed such a remedy. There is no express language in the FNHRA barring a nursing home resident from seeking a remedy through § 1983. In fact, the statute specifically states that "<u>[t]he remedies</u> provided under this subsection <u>are in addition to</u> those otherwise available under State or Federal law and shall not be construed as limiting such other remedies, including <u>any</u> remedy available to an individual <u>at common law</u>." Id. § 1396r(h)(8) (emphasis added). This is exactly what plaintiff has done in this case; seeking damages under the FNHRA in addition to damages under common law negligence.

Defendants argue that this provision proves Congress did not intend to create a separate cause of action. However, the only reasonable conclusion to be drawn from this provision is that Congress did not intend to foreclose the use of any available remedy. As § 1983 "supplies a remedy for the vindication of rights secured by federal statutes,"

plaintiff is not barred from using it as a vehicle to seek redress for alleged violations of his federal rights.  Gonzaga Univ., at 283–84, 122 S. Ct. at 2275–76.  Moreover, Congress clearly stated that any common law remedies were not foreclosed.  It could also have clearly stated that § 1983 remedies were foreclosed.  It did not.

Accordingly, Congress did not specifically foreclose the use of § 1983 to enforce rights conferred by the FNHRA.  However, this does not end the analysis.

### 5. The FNHRA's Remedial Scheme and Legislative Intent

The Second Circuit has cautioned that "courts should not find a federal right based on a rigid or superficial application of the *Blessing* factors where other considerations show that Congress did not intend to create federal rights actionable under § 1983." Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 322 (2d Cir. 2005).  Further, while specific statutory provisions must be considered when deciding if an enforceable right has been conferred, courts often consider the entire statute when determining congressional intent.  See Blessing, 520 U.S. at 342–43, 117 S. Ct. at 1360 (focusing on specific terms and provisions of the Social Security Act); Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 515–16, 110 S. Ct. 2510, 2520 (considering the legislative history of the entire Boren Amendment).

In the absence of an express provision precluding enforcement through § 1983, such a suit is foreclosed only when the statute creates "a remedial scheme that is sufficiently comprehensive to demonstrate congressional intent to preclude the remedy of suits under § 1983."  Blessing, 520 U.S. at 346, 117 S. Ct. at 1362 (internal quotation marks and alterations omitted).  This requires defendant to make a "difficult showing" that permitting a suit under § 1983 "would be inconsistent with Congress' carefully tailored scheme."  Id. (internal quotation marks omitted).  The Supreme Court has cautioned

courts not to "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 423–24, 107 S. Ct. 766, 770 (1987) (internal quotation marks omitted).  The Court has found only three statutes to include a remedial scheme comprehensive enough to foreclose a § 1983 action. Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, ---, 129 S. Ct. 788, 793 (2009).  These three statutes "required plaintiffs to comply with particular procedures and/or exhaust particular administrative remedies prior to filing suit." Id. at 795.

In Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, the Court noted the "elaborate enforcement provisions" in the Federal Water Pollution Control Act ("FWPCA") which provided the Environmental Protection Agency with numerous enforcement options such as compliance orders, fines, and criminal sanctions.  453 U.S. 1, 13, 101 S. Ct. 2615, 2623 (1981).  The Court also stressed the inclusion of citizen suit provisions in the FWPCA permitting "any interested person" to seek judicial review and injunctive relief. Id. at 13–14, 101 S. Ct. at 2623.  This statutory scheme was held to evidence a congressional intent to foreclose parallel claims under § 1983. Id. at 14, 101 S. Ct. at 2623.

In Smith v. Robinson, the Court considered provisions in the Education of the Handicapped Act ("EHA"). 468 U.S. 992, 104 S. Ct. 3457 (1984).  This statute provided specific administrative procedures for aggrieved individuals to exhaust before seeking judicial review in federal court. Id. at 1011–12, 104 S. Ct. at 3468.  The Court determined that such a "carefully tailored scheme" indicated that Congress intended the EHA to be the

exclusive remedy for qualified handicapped students to pursue a claim. Id. at 1012–13, 104 S. Ct. at 3469.

Most recently, the Court analyzed the Telecommunications Act's ("TCA") detailed provisions allowing for restrictive administrative and judicial remedies. City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 125 S. Ct. 1453 (2005). The Court pointed out that "in *all* of the cases in which we have held that § 1983 *is* available for violation of a federal statute, we have emphasized that the statute . . . *did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated." Id. at 121, 125 S. Ct. at 1459. The TCA not only provided for specific remedies, it restricted the available relief "in ways that § 1983 does not." Id. at 122, 125 S. Ct. at 1459. The Court concluded that these "deliberate" limitations on available remedies were "not to be evaded through § 1983." Id. at 124, 125 S. Ct. at 1460.

The FNHRA dictates that states shall establish a process for the investigation of alleged abuse and/or neglect in nursing home facilities. 42 U.S.C. §§ 1396r(g)(1)(C), (g)(4). If an investigation reveals noncompliance with the statute's requirements, the FNHRA's enforcement provisions allow the state and/or the Secretary of Health and Human Services (the "Secretary") to take remedial actions including the imposition of civil fines, denial of payment[2], appointment of temporary management, closure of the facility, and transfer of residents to a different facility. Id. §§ 1396r(h)(2)(A)(i)–(iv), (h)(3)(A)–(C). The only references to administrative appeals are provisions requiring states to provide

---

[2] The Secretary's authority to withhold federal funds is insufficient to preclude a finding that a statute provides an enforceable federal right. See Wilder, 496 U.S. at 521–22, 110 S. Ct. at 2524 (noting that the Medicaid Act does not explicitly prohibit private actions and holding that the Secretary's ability to curtail funding did not evidence an intent to bar individual enforcement).

fair processes to hear appeals from (1) residents concerning transfers and discharges, and (2) mentally ill individuals adversely affected by determinations made at pre-admission screening. Id. §§ 1396r(e)(3), (e)(7)(F).

Although this scheme allows for an array of enforcement options, nothing in these provisions can be said to bar individuals from also enforcing rights through § 1983. There is no citizen suit provision to indicate that a § 1983 action is unnecessary as in Sea Clammers. There is no administrative exhaustion requirement as in Smith. Nor is there an available administrative or judicial remedy to address residents' complaints of inadequate or negligent care—much less a restrictive remedy like that in Rancho Palos Verdes. Indeed, the FNHRA specifically states that its provisions do not limit available remedies. Id. § 1396r(h)(8). While states are required to investigate allegations of abuse and/or neglect, the FNHRA does not characterize this as the exclusive avenue for residents to seek redress for violations of the statute. This remedy complements, rather than supplants, § 1983. Indeed, the state's investigation is intended to address negligent care and prevent future abuse, not provide damages or other relief available only through judicial action. In short, the FNHRA's enforcement procedures are not sufficiently comprehensive to obviate the need for a § 1983 action.[3]

As repeatedly noted above, the overarching principle guiding this analysis is congressional intent. A review of the well-documented legislative history buttresses a finding that Congress intended to confer an enforceable federal right under the FNHRA.

---

[3] One of the cases on which defendants rely acknowledged that "[i]n light of Congress' unambiguous desire to promote the standard of care provided to nursing home residents, and the statutory acknowledgment that other remedies may remain available, the Court is unconvinced that a private remedy would be inconsistent with the underlying legislative scheme." Brogdon, 103 F. Supp. 2d at 1332.

Congress passed the FNHRA in 1987 in response to widespread instances of abuse, neglect, and inadequate care that was occurring in nursing homes and mental health facilities across the country. See H.R. Rep. No. 100-391, pt. 1, at 452 (1987), reprinted in 1987 U.S.C.C.A.N. 2313, 2313-272.

> [I]n many . . . nursing homes, individuals who are admitted receive very inadequate—sometimes shockingly deficient—care that is likely to hasten the deterioration of their physical, mental, and emotional health. The IOM Committee concluded that the "poor-quality homes outnumber the very good homes."
> The Committee is deeply troubled that the Federal government, through the Medicaid program, continues to pay nursing facilities for providing poor quality care to vulnerable elderly and disabled beneficiaries.

Id. The main purpose of the FNHRA was to improve the quality of care that nursing home residents receive. Id. By enacting this statute, Congress sought to protect nursing home residents—many of whom could not protect themselves—from the very type of negligence alleged by Pantalone. To prevent residents from enforcing the rights afforded to them by the FNHRA would be contrary to legislative intent.

Accordingly, the individual rights conferred by the FNHRA are enforceable through § 1983.

## IV. CONCLUSION

Plaintiff has sufficiently alleged that defendants violated §§ 1396r(b)(1)(A) and (b)(4)(A)(i) of the FNHRA, which confers individual rights enforceable through § 1983.

As a result of the above, it is

ORDERED that

1. Defendants' motion to dismiss is DENIED; and

2. The defendants shall file an answer to the complaint on or before April 29, 2011.

     IT IS SO ORDERED.

_____
United States District Judge

Dated: April 15, 2011
       Utica, New York.